(No. 41255.—

THE PEOPLE OF THE STATE OF ILLINOIS *et al.*, Appellees, *vs.* ARNOLD ABRAMS *et al.*, Appellants.

*Opinion filed January 25, 1971.—Modified on denial of rehearing June 24, 1971.*

Underwood, C.J., and Davis and Ryan, JJ., dissenting in part.

Bellows, Bellows & Magidson, Kleinman, Cornfield & Feldman, and Ettinger & Schaner, all of Chicago, for appellants.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel,) for the People.

Raymon F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and John J. George, Assistants Corporation Counsel, of counsel,) for appellee City of Chicago.

PER CURIAM: A jury in the circuit court of Cook County found each of the 11 defendants guilty of violating one or more of the statutes or ordinances under which complaints had been filed. The defendant Arnold Abrams was convicted of selling liquor without a license in violation of the Municipal Code of the City of Chicago and was fined $200. The defendant Florence Levinsohn, convicted on two complaints of aggravated assault and on two complaints of battery, received a sentence of two months on each charge. The sentences were ordered to run concurrently. She was also convicted of disoderly conduct and of interfering with a police officer in the performance of his duties, both violations of the Municipal Code, and fined $200 and $100 respectively on these charges. Convictions of disorderly conduct were entered against the other defendants, Helen Ketterer, Michael Kemper, Maury Lubet, William E. Simpson, Leslie Friedman, Robert Lane, Maxwell Primack, Preston Browning and Russell DuPree. Fines of $200 were imposed against these defendants. Excepting the defendant Helen Ketterer, each of these defendants was also found guilty of interfering with a police officer in the performance of his duties and was fined $100. Constitutional questions raised give this court jurisdiction on direct appeal.

On the evening of April 8, 1967, the Chicago Peace Council and the Student Mobilization Committee to End the War in Vietnam sponsored a "send-off" party which was held at the home of Mr. and Mrs. Arnold Abrams in Chicago. The party's object was to raise funds for the transportation of the groups' representatives to New York City, where a march protesting the war in Vietnam was to be held on April 15. Leaflets announcing the date, place, time, charge for admission, and purpose of the proposed party had been placed at several public locations in the neighborhood. The leaflets bore the request "R.S.V.P." and two telephone numbers were given.

Sergeant Lewis Smith of the Chicago Police Depart-

ment obtained one of the announcements on April 8 and brought it to the attention of Lieutenant Cassidy at the 21st District Police Station. Early that evening the lieutenant informed Officers Andrew Alinovich and Donald Duffy of the party, gave them the announcement and instructions to go to the Abramses' house in order, according to testimony given by the police at trial, to make an "investigation and surveillance" and to "discover what was going on there." The two officers, who were not in uniform, arrived at the Abramses' house at about 9:15 P.M. They entered the house and purchased two tickets of admission at a table set up just inside the entranceway to the house. The officers did not identify themselves at this time nor were they asked to do so. Upon entering the officers observed two signs taped to a door in the entry hall which read: "Ice 75¢—drinks free," "Cups 30¢—beer free," and "No drinks served to minors under 21 years of age." They remained in the house for about 10 minutes. They said they observed odors of alcohol on the breaths and from drinking cups of a number of young persons who appeared to be underage.

Upon returning to their car Officers Alinovich and Duffy resumed normal patrol activity for about an hour and then returned to the district station at 10:30 P.M. There they met with Lieutenant Cassidy and Sergeant Smith. After a discussion of "probable violations" of law, the lieutenant instructed Alinovich and Duffy to return to the house. The record is not clear concerning the purpose of this second visit to the Abramses' house. It cannot be determined whether the officers were instructed to make arrests or whether they were only to continue their investigation. The two officers left the station, and about one-half hour later by pre-arrangement met three other officers near the Abramses' house. After a brief discussion, the five officers proceeded directly to the house, arriving at approximately 11:50 P.M. No attempt was made at any time to procure a search or an arrest warrant.

As the officers reached the admission table inside the door, they were stopped by either the defendant Florence Levinsohn or by Mrs. Alice Peurala, and were asked if they were police officers. They identified themselves as officers and were then informed that their presence was not desired. Several persons were congregated at the table, including the defendants Mrs. Abrams and Mrs. Levinsohn. The officers were asked if they had a search warrant and were told they could not enter without a warrant. Officer Alinovich testified that he informed Mrs. Levinsohn that a crime had been committed in his presence and that, therefore, no warrant was necessary. According to Alinovich's testimony, the offense he referred to involved a youth seated at the admission table. At his request the youth handed Alinovich a styrofoam cup, which the officer said contained an alcoholic beverage. The evidence is conflicting as to whether the cup was on the table or in the boy's hand when first noticed by Alinovich. When the cup was handed to the officer a minor scuffle developed. Alinovich testified that Mrs. Levinsohn, claiming the cup belonged to her, reached for the cup and in her efforts to take it struck him several times. According to the testimony of the officers, Alinovich handed the cup to Officer Hines and then Mrs. Levinsohn struck Hines. Mrs. Abrahams and Mrs. Levinsohn testified, however, that when Mrs. Levinsohn reached for the cup, Officer Hines took hold of her. Mrs. Abrams then, they said, pulled Mrs. Levinsohn behind her. Throughout this incident, Mrs. Abrams and others standing near the door were insisting that the officers leave the house until they had obtained a search warrant.

The argument at the front of the house drew many persons in the interior of the house to the entrance. The scene became one of intense confusion with many persons shouting at the officers. Mr. Abrams and several of the other defendants had forced their way through the crowd to a position where they stood confronting the police. The argu-

ment continued and, after a short time, the officers retired to the entrance hallway and blocked off the crowd by closing the inner door. Other possible exits from the house were blocked and a call for assistance was made by the officers.

After aid had arrived the officers asked Mrs. Levinsohn to step outside. She was placed under arrest on the front porch. While this arrest was being made the defendant Leslie Friedman, the officers said, was interfering with the arresting officer by constantly interjecting in the officer's conversation with Mrs. Levinsohn. After he failed to comply with several requests by the officers to move aside, Friedman was also arrested. As the police attempted to re-enter the house for the announced purpose of finding the youth concerned in the "styrofoam cup" incident, their passage, they testified, was blocked by the defendants Lane, Primack and DuPree, who continued to insist that a search warrant be obtained. They, too, were placed under arrest. The defendants Ketterer, Lubet, Browning, Simpson and Kemper were taken into custody when they locked arms to prevent the entry by the police. Although it is not clear when Abrams, the owner of the house, was placed under arrest, he was arrested that night on a charge of having sold liquor without a license.

The defendants contend that the entries by the officers without a warrant into the Abramses' house constituted unreasonable searches in violation of the fourth amendment. Accordingly, they argue, the physical evidence seized, as well as the testimony of the officers as to matters observed during the unlawful searches should have been excluded from evidence.

The fourth amendment is intended to guard the privacy of a person in his home, as well as that of invited guests, from wrongful intrusions. (See *Jones* v. *United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725.) The interest of society in this protection was described by the Supreme Court in *Johnson* v. *United States*, 333 U.S. 10, 14, 92

L. Ed. 436, 440, when it said: "The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of a search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent." Only last term the Supreme Court cautioned that, except for a "few specifically established and well-delineated" situations, the constitution prohibits a warrantless search of a dwelling. (*Vale* v. *Louisiana,* 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969.) A consented-to search is one of the established exceptions (*Vale* v. *Louisiana,* and cases cited), but there is no contention here by the prosecution that there was such a search.

It is argued by the prosecution that the physical evidence seized and the oral testimony of the police officers were not subject to suppression. Relying principally on *Harris* v. *United States,* 390 U.S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992 and *People* v. *Wright,* 41 Ill.2d 170, it is said that it is not a search to observe through the use of the senses that which is open and patent, and that "objects falling within the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." 390 U.S. 234, 236, 19 L. Ed. 2d 1067, 1069.) The pivotal question here is, of course, whether the officers had "a right to be in the position to have that view." That is, were they lawfully within the Abramses' residence when the observations the prosecution refers to were made?

The basic argument of the appellees is that the nature of the party, together with the means used to publicize it, served to change, with the consent of the Abramses, the character of the house for the time from that of a private dwelling to that of a public place. It is said that the object of the party was one of general public interest and that

the leaflets of invitation were directed to the public at large. Too, the placing of these announcements at public locations is said to show further the public character of the assembly. The precise question appears to be novel and not without difficulty. The case is illustrative of vexing search and seizure situations which confront law enforcement officers and fourth-amendment questions upon which the courts must pass. It is our conclusion that the officers' first entry into the residence was lawful and that their observations were not improper. Nothing appeared in the invitation itself to limit the welcome extended. The leaflets of invitation had been placed in public locations where they were accessible to all persons, without regard to their views on our involvement in Vietnam. The officers were admitted simply by paying the charge for admission. Neither they nor other persons were requested to identify themselves, nor were they required to do so voluntarily. (See *People* v. *Walker,* 30 Ill.2d 213, 215.) Admittance was general and unrestricted. Considering these circumstances, any testimony from observations made by the officers on the occasion of their first entry was not subject to suppression. However, the officers' second entry to the Abrams's home was a different matter. Officer Alinovich testified that he and Officer Duffy had departed from the premises at their first visit to avoid the possibility of a disturbance when they had overheard Dr. Abrams informing the guests that policemen were among the guests. It is reasonable to say Officers Alinovich and Duffy knew that they would be unwelcome should they attempt to return. The confrontation which occurred upon their second visit demonstrated an intention at that time to exclude police from the party. The open invitation which made their first admittance objectionable cannot be used to support the second entry. Nor can it be said that their second entrance was proper on the ground that probable cause for arrest existed from observations made on their first visit. The police, when attempting a second entry, claimed

only that it was justified because a liquor offense involving the young boy at the admission table was being committed in their presence. It is clear that the second and illegal entrance preceded their observation of the incident involving the boy. One, of course, cannot justify a search by showing that it brought to light grounds for arrest. *Johnson* v. *United States,* 333 U.S. 10, 16, 92 L. Ed. 436, 442.

The fourth amendment is typically invoked to bar from trial tangible, physical materials acquired either during or as a direct result of an illegal search. (*Wong Sun* v. *United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) But, consistent with the reasoning which supports the right to suppress physical materials, the right to bar or suppress has been extended to oral statements made during the course of an illegal search. (*Silverman* v. *United States,* 365 U.S. 505, 5 L. Ed. 2d 734, 81 S. Ct. 679.) Too, proposed testimony as to matters observed during an unlawful search has been held subject to suppression. (*Wong Sun* v. *United States,* 371 U.S. 471, 484-485, 9 L. Ed. 2d 441, 453-454.) The rationale of this was described by the Supreme Court in *Alderman* v. *United States,* 394 U.S. 165, 177, 22 L. Ed. 2d 176, 189, 89 S. Ct. 961, "Nothing seen or found on the premises may legally form the basis for an arrest or search warrant or for testimony at the homeowner's trial, since the prosecution would be using the fruits of a Fourth Amendment violation." See also *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182.

In determining what character of evidence, when challenged, is to be excluded the Supreme Court has said: "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting the establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality

or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959)." (*Wong Sun* v. *United States,* 371 U.S. 471, 487-488, 9 L. Ed. 2d 441, 455.) Applying this to the unlawful, *i.e.,* the second entry, evidence in the form of the testimony of the officers regarding the youth who was seated at the admission table and the evidence seized, *i.e.,* the cup and its contents, should have been suppressed. Any other evidence offered which was procured by this entry should have been suppressed, except the testimony concerning those whose conduct in response to the illegal entry caused them to be charged with disorderly conduct, battery, aggravated assault and interfering with a police officer. This testimony was admissible because we hold that an accused cannot effectively invoke the fourth amendment to supress evidence of his own unlawful conduct which was in response to police actions in violation of the amendment.

The consequence of an illegal search, under the exclusionary rule, is that the evidence obtained of past or existing criminal activity, though it may be competent otherwise, is subject to suppression in the criminal proceeding. In addition, the offending officers may be subjected to civil and criminal liability. This exclusion of evidence extends to indirect as well as direct products of officers' unlawful action so that "fruits" of that action may be suppressed. Thus, testimony as to matters observed during an unlawful search which relate to past or existing criminal activity may be excluded as evidence. (*Cf. Wong Sun* v. *United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) But there is no authority to extend the rule to allow the suppression of evidence of crimes which arise from and are in reaction to an illegal search. (*Cf. Vinyard* v. *United States* (8th cir., 1964), 335 F.2d 176; *United States* v. *Perdiz* (S.D.N.Y., 1966), 256 F. Sup. 805; see also, *Troop* v. *United States* (7th cir., 1956), 235 F.2d 123; *People* v. *Guillory* (1960), 178 Cal. App. 2d 854, 3 Cal. Rptr. 415.) In our judgment

it would be beyond the intendment of the rule to extend it. We consider that the prohibiting of the use of evidence obtained of past or existing criminal activity, as well as the exposing of the offending officers to criminal and civil liability, were the only sanctions which have been intended under the exclusionary rule to redress, in a sense, the constitutional violation and to fulfill the policies underlying the rule, which are referred to in *Wong Sun* v. *United States,* 371 U.S. at 486, 9 L. Ed. 2d at 454. We judge that the sanctions now available provide adequate remedy against wrongful police intrusions. This is especially true where the conduct of the officers has not been intentionally unlawful. We and other courts, through whose decisions the rule of exclusion has evolved, have not contemplated that one who commits an unlawful homicide, assault, or other offense in reaction to an illegal search would be entitled to suppress the evidence of his deed. To countenance, through the use of the exclusionary rule, what can be regarded as an unlawful species of self-help would be to encourage unlawful and retaliatory conduct. It would set a policy fundamentally in opposition to a civilized rule of law.

There have been cases with some resemblance to the one here. (See *Vinyard* v. *United States* (8th cir., 1964), 335 F.2d 176; *United States* v. *Perdiz* (S.D.N.Y. 1966), 256 F. Sup. 805; *Troop* v. *United States* (7th cir. 1956), 235 F.2d 123; *People* v. *Guillory* (1960), 178 Cal. App. 2d 854, 3 Cal. Rptr. 415.) The Federal cases involved attempted briberies of officers following searches and seizures of physical evidence later determined to have been unlawful. In *Perdiz* the attempted bribery was regarded, without extensive discussion (see Pitler, "The Fruit of the Poisonous Tree Revisited and Shepardized" (1968), 56 Calif. L. Rev. 579, 597-598), as an independent criminal act when the defendant sought to suppress evidence of the bribe. In *Vinyard* and *Troop,* too, the courts simply treated the attempts as being independent of the searches. In *Guillory,* which

also involved an attempted bribery, the California appellate court reached a similar result, ruling that the validity of the search and seizure was immaterial to the charge of bribery. We consider these refusals to extend the exclusionary rule to have been correct.

Though the evidence which was a response or reaction to the second and illegal entry of the officers was properly admitted, the other evidence which was related to this entry should have been suppressed, as we have observed. Applying the standard fixed by the Supreme Court in *Chapman* v. *California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, upon an examination of the record we are unable to say beyond a reasonable doubt that the unconstitutionally obtained evidence did not contribute to or influence the verdicts of guilty. Accordingly, the convictions for disorderly conduct, for interfering with a police officer and for selling liquor without a license must be reversed and the causes remanded for a new trial. (See also, *Bumper* v. *North Carolina,* 391 U.S. 543, 550, 20 L. Ed. 2d 797, 803, 88 S. Ct. 1788.) For reasons we shall discuss, the convictions of the defendant Florence Levinsohn for aggravated assault and for battery require a complete reversal.

The defendants' contention that they are entitled to a complete reversal cannot be entertained. They argue that the convictions were improper, because they were justified under section 7—2 of the Criminal Code in using reasonable force to prevent the officers' unlawful entry into the Abramses' residence. The section provides: "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack upon a dwelling." (Ill. Rev. Stat. 1969, ch. 38, par. 7—2.) The Criminal Code further provides that the use of force authorized under section 7—2 is an affirmative defense (Ill. Rev. Stat. 1969, ch. 38, par. 7—14) which requires that unless the State's evidence raises

the issue involving the affirmative defense, the defendant, to raise the issue of the defense, must offer some evidence thereon. (Ill. Rev. Stat. 1969, ch. 38, par. 3—2.) We do not, however, entertain the argument because it does not appear that the defendants raised the issue in the trial court. Thus, since the issue concerning the affirmative defense cannot be raised for the first time on appeal, we need not consider it. *People* v. *Nugara,* 39 Ill.2d 482, 488-489; *People* v. *Redding,* 28 Ill.2d 305, 308.

It is also argued that the convictions under the ordinances relating to disorderly conduct and to interfering with a police officer in the performance of duties must be reversed outright. The reason offered is that the ordinances are unconstitutional because they are vague and they prohibit conduct protected by the first amendment. Like challenges to the two ordinances were rejected by us in *City of Chicago* v. *Gregory,* 39 Ill.2d 47, and *City of Chicago* v. *Lawrence,* 42 Ill.2d 461. Too, our position that these ordinances were not constitutionally vague or overbroad was recently restated in *People* v. *Meyer,* 44 Ill.2d 1. Though *Gregory* was reversed by the United States Supreme Court, the principal basis for reversal was that the court considered the defendants had been convicted without evidence that their conduct had been disorderly. (*Gregory* v. *City of Chicago,* 394 U.S. 111, 22 L. Ed. 2d 134, 89 S. Ct. 946.) The record in the present case, however, shows ample evidentiary support for the convictions of the defendants under the ordinances. The other grounds given by the Supreme Court for the reversal in *Gregory* are not applicable here.

A contention of the defendant Florence Levinsohn is that the complaints which charged her with aggravated assault and with battery were fatally defective in that they failed to charge the respective offenses. Section 111—3 of the Code of Criminal Procedure, consistently with the requirement of our constitution that an accused be apprised of the nature and cause of the accusation (Ill. Const. art. II,

sec. 9; see also *People* v. *Heard,* Docket No. 42396), provides in part: "(a) A charge shall be in writing and allege the commission of an offense by: * * * (3) Setting forth the nature and elements of the offense charged." (Ill. Rev. Stat. 1969, ch. 38, par. 111—3(a)(3).) Where the nature and elements of the offense with which the accused is intended to be charged are not set forth in the complaint, it fails to state an offense and is subject to dismissal under section 114—1(a)(8) of the Code of Criminal Procedure. (Ill. Rev. Stat. 1969, ch. 38, par. 114—1(a)(8).) It is sufficient to allege an offense in the language of a statute if the words so far particularize the offense that by their use alone an accused is informed with reasonable certainty of the precise offense with which he is charged (*People* v. *Mills,* 40 Ill.2d 4), or by specifically alleging all the facts which constitute the crime. See *People* v. *Vraniak,* 5 Ill.2d 384, 389; *People* v. *Barnes,* 314 Ill. 140, 145.

Two of the complaints charged that Mrs. Levinsohn committed the offense of "aggravated assault" against Officers Andrew Alinovich and Kenneth Hines. They alleged that she, knowing Alinovich and Hines to be police officers engaged in official duties, "did without lawful authority strike the officer(s) about the arms and body," thereby placing them in reasonable apprehension of receiving a battery. The statute defining this offense provides in part: "(a) A person commits an aggravated assault, when, in committing an assault he: * * * (6) Knows the individual to be a peace officer * * * while such officer is engaged in the execution of any of his official duties." (Ill. Rev. Stat. 1969, ch. 38, par. 12—2(a)(6).) To commit an assault, including an aggravated assault, one without lawful authority must engage "in conduct which places another in reasonable apprehension of receiving a battery." (Ill. Rev. Stat. 1969, ch. 38, par. 12—1.) Assault is an offense distinct from battery. If there has been any touching or other form of physical contact with the victim, a battery has been

committed and not an assault, assuming the presence of the other requirements for a battery. The Comments to section 12—1 of the Criminal Code (assault) observe: "It should be emphasized that an assault does not involve a touching. If a touching occurs, by any means, it is a battery." (See Committee Comments, S.H.A., ch. 38, § 12—1.) Too, the Comments to the section which defines aggravated assault note: "If there is a touching the offense would not come within this section but should be prosecuted under the attempt, battery, or aggravated battery section." (Committee Comments, S.H.A., ch. 38, § 12—2.) Considering this, it must be concluded that the assault complaints failed to charge the offense of aggravated assault. The conduct alleged that the officers had been struck and therefore assault was not charged. The complaints were fatally defective and the judgments of conviction thereunder must be reversed. See *People* v. *Heard,* Docket No. 42396; *People* v. *Billingsley,* 67 Ill. App. 2d 292, 297-301.

Considering the complaints which assertedly charged the defendant Levinsohn with battery we note that the statute defining the offense states: "(a) A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." (Ill. Rev. Stat. 1969, ch. 38, par. 12—3.) The complaints here alleged that the defendant Levinsohn committed the offense of battery against Officers Alinovich and Hines in that she "knowingly and intentionally and without legal justification made physical contact with complainant herein without the consent of said complainant." It is, of course, essential that a complaint allege all the material facts constituting the offense charged. (See *People* v. *Vraniak,* 5 Ill.2d 384, 389; *People* v. *Strong,* 363 Ill. 602, 605.) The complaints here did not charge either that the physical contact was of an insulting or provoking nature or caused bodily harm, the

alternative elements of the offense. Thus, the complaints for battery were also fatally defective and the judgments of conviction thereunder must be reversed.

The defendant, Arnold Abrams, also complains that the trial judge erred in instructing the jury as to what constitutes a "sale" under a charge of selling liquor without a license. However, since the record does not show that the grounds of objection to the instruction were presented, the question is not properly before us. The rules of this court generally require that the grounds of objection be particularly specified and no basis for exception appears here.

For the reasons given, the judgments of conviction against the defendant Florence Levinsohn for aggravated assault and for battery are reversed. The remaining judgments of the circuit court of Cook County are reversed and the causes remanded for a new trial.

*Reversed in part, and reversed and remanded in part.*

Mr. CHIEF JUSTICE UNDERWOOD, dissenting in part:

I disagree with the majority's finding that the complaints charging defendant Levinsohn with aggravated assault are fatally defective and do not charge an offense. These complaints alleged that, knowing Alinovich and Hines to be police officers engaged in official duties, defendant "did without lawful authority strike the officer(s) about the arms and body" thereby placing them in reasonable apprehension of receiving a battery. Examination of the relevant statutes as stated in the majority opinion reveals that the statutory language varies from that used in the complaint only in that defendant's conduct, which created the reasonable apprehension, is described. Since this conduct involved touching, however, the majority finds that it no longer constituted assault. Sole reliance for this curious result is placed on the Committee Comments to § 12—1 and § 12—2 of the Criminal Code. (S.H.A., ch. 38, §§12—1,

12—2, pp. 697 and 700.) These comments are clearly intended only to emphasize the fact that no touching is required for assault or aggravated assault, while physical contact is required for battery. They cannot reasonably be read, in my opinion, to preclude prosecution for assault where touching is involved. This point becomes even more apparent when one considers the majority's treatment of the complaint charging Levinsohn with battery against the same two police officers. The rejection of this complaint because it did not allege that the physical contact complained of was of an insulting or provoking nature, or that it caused bodily harm, clearly indicates that all intentional physical contact without legal justification does not constitute a battery. No element of the offense of aggravated assault is absent from the complaint in question. The additional allegation of physical contact is, at most, unnecessary surplusage which does not constitute a fatal defect, and ought to be so treated. *People* v. *Adams*, 46 Ill.2d 200, 204; *People* v. *Figgers*, 23 Ill.2d 516; *People* v. *Crawford*, 23 Ill.2d 605.

DAVIS and RYAN, JJ., join in this dissent.