2025 IL App (1st) 241443-U

FIRST DISTRICT,
SIXTH DIVISION
December 5, 2025

No. 1-24-1443

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 22 CR 390901 |
| | ) | |
| LUKE WALLS-BEY, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's convictions where the trial court did not improperly curtail cross-examination or err in responding to jury questions.

¶ 2    Two years into a dating relationship, defendant Luke Walls-Bey and victim Tujuana Perkins got into an argument over unpaid rent. Perkins alleged Walls-Bey hit her, tied her up with cloth strips, and threatened to kill her with a knife. She phoned for help after escaping to a neighbor's house. A jury convicted Walls-Bey of aggravated kidnapping and domestic battery but found him not guilty of attempted first-degree murder. He received a 15-year prison term.

¶ 3    On appeal, Walls-Bey argues the trial court erred in limiting his cross-examination of

Perkins regarding her knowledge of his prior murder conviction, which he claims gave her "motivation to fabricate and embellish her own accusation of domestic violence." Walls-Bey also argues the court failed to adequately answer the jury's questions during deliberations. We affirm.

¶ 4                                                    ANALYSIS

¶ 5        Because Walls-Bey raises two discrete issues on appeal, we limit our rendition of the facts and analysis to (1) the scope of cross examination and (2) the court's answer to the jury's questions.

¶ 6                                        1. Scope of Cross Examination

¶ 7        Before trial, the State moved to admit evidence of Walls-Bey's prior conviction for the 1994 murder of his then-girlfriend, Loretta Gleaton. The State argued this evidence was admissible to show "motive, state of mind, intent, continued hostility and propensity to commit domestic violence." See 725 ILCS 115-7.4 (West 2022). The trial court granted the motion, finding "sufficient factual similarities, even though it's 28-years difference" and "the probative value outweighed any unfair prejudice to the defendant." The court allowed the evidence for the purpose of showing "motive, intent, lack of mistake, and propensity and state of mind of the defendant."

¶ 8        The parties stipulated that Assistant State's Attorney (ASA) Brian Clauss would testify that he took a handwritten statement from Walls-Bey about the stabbing death of Gleaton. The State read the statement to the jury in its entirety, detailing Gleaton's murder. In short, on September 27, 1994, Gleaton kicked Walls-Bey out of their shared apartment. When Walls-Bey forced his way back inside, Gleaton told him to get out and swung at him with scissors. A struggle ensued, and as Walls-Bey forced Gleaton's arms "over," the scissors were pushed into her chest near her heart. Gleaton cried out, "You're killing me." Gleaton pulled the scissors from her chest and Walls-Bey laid her on the floor of the apartment. He waited for her to die, covered her body with a bed sheet, and left to stay with a cousin.

¶ 9        On cross-examination, defense counsel asked Perkins about how she met Walls-Bey and

her efforts to get him into a carpentry program. When defense counsel asked, "[H]e had told you that he was interested in carpentry and you found a program through Chicago prison –," the court sustained the State's objection, but overruled its subsequent relevance objection. After Perkins testified she got to know Walls-Bey through a carpentry program that they attended together, defense counsel asked, "And the program was specifically designed for who?" The court sustained the State's objection. Defense counsel then asked Perkins whether Walls-Bey "informed [her] that he had a prior conviction." Initially, the court sustained the State's objection but granted counsel's request for a sidebar.

¶ 10　　During the sidebar, defense counsel explained she wanted to explore Perkins's knowledge of the prior murder to show Perkins "created this lie, these lies and because she knows the fact that he was in prison for this specific or very similar crime." The State clarified that its objection was based on relevance. Defense counsel responded that its question "does go towards motive. It's part of our defense." The court concluded it was "not saying it's unduly prejudicial" and overruled the State's objection. The court further explained, "[I]t's very limited and you can't just say did you know that he was convicted. You need to be more specific. *** But I'm not going to let you harp on this. *** It could go to bias, interest, or motive."

¶ 11　　Back in front of the jury, defense counsel asked, "You met my client in 2019, and you knew that he was – he had a conviction, a murder conviction?" Perkins responded, "Yes." The State objected based on lack of foundation and the court stated, "Well, she answered yes. I'm going to allow it, but you didn't set [a] foundation." Counsel acknowledged the court's ruling, did not probe further, and then moved on to another line of questioning.

¶ 12　　Walls-Bey argues the trial court erred by preventing him from examining Perkins about "her knowledge of [his] past criminal history." Specifically, Walls-Bey claims he was prevented from eliciting testimony that "Perkins knew that Walls-Bey had previously engaged in physical

violence against a domestic partner," which gave Perkins "motivation to fabricate and embellish her own accusation of domestic violence."

¶ 13    The confrontation clause (U.S. Const., amend. VI) guarantees the opportunity for effective cross-examination, not "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985); *People v. Jones*, 156 Ill. 2d 225, 243-44 (1993). A court has broad discretion to limit the scope of cross-examination, and such limitations will be reversed only if the court abused its discretion. *People v. Palmer*, 2017 IL App (1st) 151253, ¶ 25. "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 14    The record shows defense counsel cross-examined Perkins extensively and tested the reliability of her trial testimony by questioning her about the origins of her relationship with Walls-Bey, their joint participation in a carpentry program, the events of December 4, 2021, and her subsequent interviews with police and prosecutors. Most pertinent, the jury heard Perkins testify that she knew Walls-Bey had a prior murder conviction. The jury also heard the details of Gleaton's murder through Clauss's stipulated testimony. This allowed counsel to argue its defense theory during closing argument that "[Perkins knew] about [Walls-Bey]'s past. It's a past that he's not proud of. She knows the details of the past because he told her. And she knew she could weaponize his past against him."

¶ 15    Walls-Bey argues his "counsel was not able to question Perkins about the knowledge of her facts of the prior murder, in particular whether she knew it involved a particular girlfriend and a sharp object." This misstates the record. During cross-examination, defense counsel asked Perkins what Walls-Bey "told" her about his prior conviction, to which the trial court correctly sustained a hearsay objection. See *People v. Brown*, 2017 IL App (1st) 142877, ¶ 46. Nonetheless,

defense counsel was able to elicit testimony that Perkins knew of Walls-Bey's murder conviction. Once this point was established, counsel moved on voluntarily, choosing to shift to a different set of questions without probing further into Perkins's knowledge of the crime. The court did not curtail further questioning or violate Walls-Bey's constitutional right to confrontation.

¶ 16    Walls-Bey's reliance on *People v. Myles*, 2020 IL App (1st) 171964, *People v. Blue*, 205 Ill. 2d 1 (2005), and *People v. Averhart*, 311 Ill. App. 3d 492 (1999), is unhelpful. *Myles* was a review of a second-stage postconviction dismissal based on an ineffective assistance of trial counsel claim. *Myles*, 2020 IL App (1st) 171964, ¶ 1. It bears little factual resemblance to the instant case. In *Blue*, the supreme court found the trial court erred in barring *all* inquiry into the gang affiliation of the prosecution's witnesses because it "unreasonably limited the defense from exploring these witnesses' biases. *Blue*, 205 Ill. 2d at 18. Similarly, in *Averhart*, the appellate court found the trial court erred in barring the defendant from eliciting *any* testimony that the defendant and arresting officer had been involved in a prior altercation, after which the defendant lodged a complaint against the officer, because it prohibited the defense from demonstrating "the reasons why [the officer] would have a motive to testify falsely." *Averhart*, 311 Ill. App. 3d at 494, 504.

¶ 17    Unlike these cases, the court here did not entirely bar Walls-Bey's counsel from exploring its defense theory or inquiring as to Perkins's knowledge of Walls-Bey's prior murder conviction. Instead, it reasonably required that appropriate evidentiary procedures be observed before introducing the evidence. The court also overruled many of the State's objections; and when an objection was sustained, counsel chose not to pursue the matter further. Under the circumstances, the court did not abuse its discretion in ruling on the scope of Perkins's cross examination.

¶ 18                                2. Jury Questions

¶ 19    Next, Walls-Bey argues the trial court failed to properly respond to the jury's questions during deliberations because its response "added additional commentary that was not responsive

to the jury's specific inquiry" and disregarded the second part of the jury's inquiry. We disagree.

¶ 20 "Jurors are entitled to have their questions answered." *People v. Reid*, 136 Ill. 2d 27, 39 (1990). " 'Where a jury has raised an explicit question on a point of law arising from the facts over which there is doubt or confusion, the court should attempt to clarify the question in the minds of the jury members.' " *Id.* (quoting *People v. Jackson*, 89 Ill. App.3d 461, 479 (1980)). In answering the jury's questions, the court "must not misstate the law." *People v. Gray*, 346 Ill. App. 3d 989, 994 (2004).

¶ 21 Under appropriate circumstances, a trial court may exercise its discretion and decline to answer a jury's question if the instructions are readily understandable and sufficiently explain the relevant law, if further instructions would serve no useful purpose or would potentially mislead the jury, if the jury's inquiry involves a question of fact, or if the giving of an answer would cause the court to express an opinion which would likely direct a verdict one way or another. *Reid*, 136 Ill. 2d at 39 (and authorities cited therein). "Furthermore, if the jury's question is ambiguous and any response to the question may require 'a colloquy between the court and the jury, a further explanation of the facts, and perhaps an expression of the trial court's opinion on the evidence,' the circuit court may refuse to answer the question. [Citation]." *Id.* at 39-40.

¶ 22 Before deliberations, the court gave Walls-Bey's jury the following Illinois Pattern Jury Instruction (IPI) 11.11 pertaining to domestic battery: "A person commits the offense of domestic battery when he knowingly and by any means causes bodily harm to any family or household member." The jury also received IPI 11.12: "To sustain the charge of domestic battery, the State must prove *** That the defendant knowingly caused bodily harm to Tujuana Perkins."

¶ 23 During deliberations, the jury sent a note to the court that read: "Question two: Battery can we get a more clarified definition of bodily harm? Does nonphysical i.e. mental emotional harm also count?" The parties agreed there was no Illinois Pattern Jury Instruction (IPI) on the definition

of bodily harm applicable to the case. However, they disagreed with the language to include in a non-IPI instruction.

¶ 24    The State requested an instruction that read: "The term bodily harm means harm to the body, which is physical, which includes pain. Physical pain does not require physical evidence to constitute bodily harm consistent with the case law." The defense requested an instruction that read: "Bodily harm would mean some sort of physical pain or damage to the body like lacerations, bruises, or abrasions, whether temporary or permanent, is required." The trial court provided the following typewritten "combined non-IPI" instruction to the jury, labeled "Jury Inst. #27": "Bodily harm means some sort of physical pain or damage to the body. Bodily harm does not require visible evidence."

¶ 25    The court explained this "combined non-IPI" instruction was not inconsistent with what the defense was proposing, and said it was not going to give "examples" because "that would be more confusing to the jury because then you're giving them examples that may or may not apply in this case." We agree. Examples would serve no useful purpose and could potentially mislead the jury. Furthermore, the court's instruction is consistent with case law provided by both the State and defense counsel and accurately reflects the law.

¶ 26    In *People v. Mays*, 91 Ill. 2d 251, 256 (1982), the supreme court defined "bodily harm" as "some sort of physical pain or damage to the body, like lacerations, bruises or abrasions, whether temporary or permanent." *Id.* Subsequent cases have made clear that proving "bodily harm" does not require physical evidence like visible injuries; a victim's credible testimony describing their pain can be enough. See *People v. Hartfield*, 2022 IL App (1st) 200719, ¶ 19 ("To determine whether an accused's actions caused bodily harm, the trier of fact may both consider direct evidence of injury and also infer an injury based upon circumstantial evidence 'in light of common experience.' [Citation]."); *People v. Gaither*, 221 Ill. App. 3d 629, 634 (1991) ("There need not

be direct evidence of injury to sustain a conviction of battery based on bodily harm."). See also, *e.g.*, *People v. McCrimmon*, 225 Ill. App. 3d 456, 466 (1992) (finding bodily harm where the victim testified his shoulder hurt and he took the next day off work after been slammed against a building); *People v. Wenkus*, 171 Ill. App. 3d 1064, 1067 (1988) (bodily harm shown by evidence of victim's physical pain from striking chin against a stair after having been pushed down the stairs); *People v. Johnson*, 2015 IL App (1st) 123249, ¶ 32 (although there was no visible damage around the victim's neck, this did not preclude a finding of bodily harm where she likely felt physical pain). Given this case law and considering the proposed non-IPI instructions each side tendered, the trial court did not abuse its discretion in giving the "combined non-IPI," which addressed the jury's concern and accurately stated the law.

¶ 27     Regarding the second part of the jury's question, "Does nonphysical i.e. mental emotional harm also count?", the court asked the parties, "How do [you] want me to answer that part?" The State answered, "I would believe that the additional instruction going back to the jury would also cute [*sic*] that second question" and defense counsel responded, "I would say that they have all the provided instructions, they should continue deliberating."

¶ 28     In accord with defense counsel's suggestion, the court decided to "just leave it [']please see additional instructions.['] " Walls-Bey cannot now complain that the court did not "directly answer[ ]" the question. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (defendant's invitation or agreement to the procedure later challenged on appeal goes beyond mere waiver and amounts to an estoppel).

¶ 29     Furthermore, the cases Walls-Bey relies on are distinguishable. In *People v. Allen*, 2022 IL App (1st) 190158, the trial court received a note from the jury that "exhibited confusion concerning the applicability of accountability" despite the jury not having been instructed on accountability. *Id.* ¶ 59. Although the court agreed with defense counsel that the question should be answered in

the negative, it never provided this answer to the jury. *Id.* ¶¶ 40-41. This court found that the trial court's failure to answer the jury's question properly, or at all, was error and resulted in the jury convicting the defendant based on a theory not pursued by the State at trial. *Id.* ¶ 59. Similarly, in *People v. Williams*, 2013 IL App (4th) 110936, the reviewing court found the trial court improperly answered the jury's question when it provided the jurors with a definition of an uncharged offense because it "presented the jury with a new theory of the case." *Id.* ¶ 21.

¶ 30    Here, the trial court answered the first part of the jury's question and provided an appropriate answer that directly addressed the jury's concerns and accurately reflects the law. As to the second part of the jury's question, everyone agreed it was best to leave it alone, as the jury had "all the provided instructions, [and] they should continue deliberating." Under the circumstances, we find no abuse of discretion where the instructions were readily understandable and sufficiently explained the law, and further instructions or examples would potentially mislead the jury or cause the court to express an opinion on the evidence.

¶ 31                                                    CONCLUSION

¶ 32    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.