[No. 11933-8-I.   Division One.   June 22, 1983.]

THE STATE OF WASHINGTON, *Appellant,* v. JOHNNY AYDELOTTE, *Respondent.*

*David F. Thiele, Prosecuting Attorney,* and *David Jamieson, Jr., Deputy,* for appellant.

*Kenneth C. Pickard,* for respondent.

RINGOLD, J.—Following a CrR 3.6 hearing, the trial court entered orders suppressing evidence and dismissing the charges against defendant Johnny Marcel Aydelotte, and the State appeals. We agree with the State that the trial court's decision was erroneous, vacate the order of dismissal, and remand for trial.

Late the night of February 8, 1981, Island County deputy sheriffs investigated a report of shots fired at a residence on Whidbey Island. The officers parked their vehicles outside

the residence. As the officers alit from the cars, a red Volkswagen left the driveway. The officers signaled with flashlights for it to stop. The driver did not stop, but instead swerved around the officers and possibly struck one of them on the knee. Since the VW then proceeded down a dead–end street, the officer in charge decided to delay pursuit of the driver and investigate the reported shots first.

After ascertaining that the shots had been fired into a stump by someone at the residence demonstrating a new pistol during a party, the officers set off after the VW. They located the car with the keys in the ignition parked some 60 to 100 feet from the public roadway on a private drive, and followed a set of footprints from the VW which led to a clearing. A light came on in a house about 40 yards from the clearing. The defendant, Johnny Aydelotte, appeared with a shotgun and told the officers to get off his property unless they had a warrant. The officers drew their weapons and Aydelotte allegedly pointed the shotgun at them before placing it inside the doorway of his residence. One of the officers recognized Aydelotte as the driver of the red VW, and advised him that he was under arrest. He disagreed, and the officers allegedly wrestled him to the ground and then left. Two days later, they returned to the Aydelotte residence with a search warrant and seized the shotgun and some ammunition.

Aydelotte was subsequently charged with one count of failure to obey an officer (RCW 46.61.022), four counts of assault in the second degree (RCW 9A.36.020(1)(c)), and one count of resisting arrest (RCW 9A.76.040). Prior to trial he moved to suppress all evidence of the assaults, including the observations of the victims, as fruit of the poisonous tree, arguing that the police officers had unlawfully entered his property in violation of the Fourth Amendment guaranty against unreasonable searches and seizures.

At the suppression hearing the court heard testimony concerning the events leading up to the officers' entry onto Aydelotte's land. The sequence of events following the officers' discovery of the red VW on Aydelotte's property,

however, appears in the record only in an offer of proof made by the State. When the State tried to introduce testimony at the suppression hearing relating to these events the defense objected, arguing that the only issue was the legality of the entry and that subsequent events were immaterial. The trial court sustained the objection, and the State did not appeal the ruling.

Following the suppression hearing the trial court entered written findings of fact and conclusions of law as required by CrR 3.6,[1] and granted the defense motion to suppress

---

[1]The findings as to disputed facts and the conclusions of law provided in relevant part,

"FINDINGS AS TO DISPUTED FACTS

"1. The Defendant did not recognize that the vehicles that drove up to the Morgan residence when he was leaving were police vehicles.

"2. The defendant did not recognize that the people inside or alighting from the vehicles which approached the Morgan residence as he was leaving were police officers.

"3. Deputy Gardner either did not order the Defendant's vehicle to stop, or if he did so order, it was made in a manner as not to be audible to the Defendant, his wife, Roger Wiebold or John Fuik, who were in the immediate area.

"4. Neither the Defendant nor his wife heard Deputy Gardner's alleged order to stop.

"5. Deputy Gardner was not struck and "injured" as that term is used in RCW 46.52.020(1).

"CONCLUSIONS OF LAW AND REASONS FOR THE
INADMISSIBILITY OF EVIDENCE

"All evidence seized by Deputies Audette, Gardner, Anderson and Heffernan after entry onto the Defendant's unimproved dirt road is suppressed as the fruits of an unlawful search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution and Article I Sec. 7 of the Washington State Constitution. The evidence suppressed includes the observations by the officers of the Defendant's alleged assault upon each of them with a shotgun, as well as any other evidence.

"The officers could not make a lawful entry onto the Defendant's property without a warrant in order to arrest him. The driver of the Volkswagen committed no felony, including, but not limited to, felony hit and run, RCW 46.52.020(1), or assault in the second degree by using his vehicle as a weapon in order to strike Deputy Gardner. Deputy Gardner did not suffer any injury as required in RCW 46.52.020(1), and the evidence established that the Defendant did not intentionally attempt to strike Deputy Gardner with his automobile, but rather was blinded by the bright headlights and flashlight. Furthermore, attempts by the officers to identify, apprehend and arrest the driver of the vehicle for any alleged misdemeanor or gross misdemeanor committed in their presence was not lawful under RCW 10.31.100, as there was no evidence and, in fact, the driver never

all evidence seized after the officers' entry onto Aydelotte's property. Finding that "the practical effect of this order is to terminate the case," the trial court dismissed all six counts against Aydelotte.

This appeal presents a single issue: Do the trial court's findings of fact support the suppression of the evidence and the dismissal of the charges?[2]

### INADEQUACY OF TRIAL COURT'S FINDINGS

■ We conclude that the trial court erred in basing its ruling on a finding that no crime had taken place sufficient to justify the officers' entry onto Aydelotte's property. That no crime may have occurred in fact does not prevent police officers from investigating suspicious circumstances which may well turn out to be criminal activity, even if such investigation takes them onto the curtilage of private property. *State v. Seagull*, 95 Wn.2d 898, 632 P.2d 44 (1981).

In *Seagull*, a police officer was canvassing the residents of an area for information concerning an automobile which had been found with a broken window and bloodstains. He entered onto residential property and knocked on a door, and receiving no answer walked around the house to another door. While in transit he noticed what he thought

---

heard the officers [*sic*] command to stop, and furthermore, once the officers decided to not pursue the vehicle immediately, before arresting the driver pursuant to an investigation they would have to secure an arrest warrant. The officers were not in any way acting in hot pursuit of the Volkswagen or its driver, since they waited 20 to 25 minutes before attempting to locate the car and driver. When the officers went onto Defendant's property looking for the Volkswagen driver, they had not one scintilla of evidence as to the actual identity of the driver.

"All observations and sensory impressions, as well as any other evidence gained by Deputies Audette, Gardner, Heffernan and Anderson, or any other Island County Deputies, while on the Defendant's property during the early morning hours of February 8th, 1981 and February 10, 1981, the date of execution of the search warrant dated February 10th, 1981, are suppressed, and the practical effect of this order is to terminate the case."

[2]Aydelotte's contention that the dismissals were proper under CrR 8.3(b) ("in the furtherance of justice") is untenable. The trial court made clear in its findings, conclusions, and order that the only defense motion being considered was the one seeking to apply the exclusionary rule.

was a marijuana plant growing in a greenhouse. He left the premises and obtained a search warrant based on his observation. In the subsequent trial of the homeowner for possession of marijuana, the trial court refused to suppress the evidence.

The Supreme Court affirmed, holding that police have an implied invitation to enter those areas of the curtilage of private property which are impliedly open to the public, such as access routes to the house, while performing legitimate police business. The court held that by walking around the house the officer did not unreasonably depart from the impliedly "public" areas so as to exceed the scope of the implied invitation. The court stated that what is reasonable police behavior would vary from case to case. *Seagull,* at 902–03.

In *Seagull,* the officer was conducting a legitimate investigation at the time he made his fortuitous observation. In the case at bench the officers thought that the driver of the red VW had committed crimes while leaving the driveway: failure to obey an officer and felony hit and run. While the trial court may have found as a fact that these crimes did not occur, in that the driver neither heard the order of the officer to stop nor hit the officer on the knee, the court made no finding as to the reasonableness of the officers' belief that the crimes may have occurred. The trial court simply concluded that because no crimes occurred, the officers acted illegally in entering Aydelotte's property to "identify, apprehend and arrest" the driver of the VW. In doing so the court misapplied the *Seagull* standard. On the facts of this case, the police entry onto the private road to find the red VW may well have been lawful as part of a legitimate police investigation.

Although the entry itself may have been lawful, however, the police may later have violated Aydelotte's Fourth Amendment rights by searching his property or by attempting to arrest him as the driver of the VW prior to the alleged assaults, without probable cause. But it is unclear from the trial court's findings just what occurred

after the police entered the property, the trial court having excluded the State's offered evidence concerning subsequent events, limiting the scope of the hearing to a determination of the legality of the officers' entry.

Under the circumstances present in this case, the findings that no crime had occurred do not support the conclusion that the entry was unlawful. Absent further factual development of the circumstances at the time of the entry and afterwards,[3] this court cannot determine whether the police entry was legal or whether a Fourth Amendment violation may have occurred following the entry.[4]

### SCOPE OF POSSIBLE EXCLUSIONARY ORDER ON REMAND

Since the court erred in failing to consider the reasonableness of the officers' actions, the order of dismissal must be reversed and the suppression order vacated and the cause remanded for further consideration. On remand, if the trial court finds that the officers' conduct in pursuing the red VW was unreasonable under *Seagull,* then the evidence gathered by the officers as the result of their illegal entry should be suppressed.

Evidence is inadmissible as "fruit of the poisonous tree" where it has been gathered by exploitation of the original illegality. *Wong Sun v. United States,* 371 U.S. 471, 9 L.

---

[3]Both parties cite the State's offer of proof, but read it differently: Aydelotte contends that the officers pointed their guns at him before he assaulted them, while the State contends that the officers drew their weapons in response to the assault.

[4]Aydelotte argues that the suppression and dismissal were proper because the officers made a warrantless arrest in violation of RCW 10.31.100. He argues that the trial court found as a fact that no felony had occurred and that no misdemeanors had occurred in the officers' presence. A crime need not have occurred prior to an officer making a warrantless arrest, however. The officer must merely have probable cause to believe such a crime has occurred in order to make a warrantless arrest. RCW 10.31.100. The trial court did not find that the officers lacked probable cause.

In addition, it may well be that no arrest was made or attempted until after the alleged assaults with the shotgun. At that time, the officers had probable cause to make a warrantless felony arrest.

Ed. 2d 441, 83 S. Ct. 407 (1963). On this record the only evidence the officers gathered by exploiting the alleged primary illegality of the entry was the identity of the driver of the red VW. If the identification of Aydelotte as the driver is suppressed then count 1, failure to obey an officer, should be dismissed.

The police did not discover evidence of the assaults against them, however, by exploiting their entry onto the property. Rather, as we conclude below, Aydelotte's alleged actions with the shotgun were "sufficiently distinguishable" from any police illegality "to be purged of the primary taint." *Wong Sun,* at 488.

Whether the evidence of crimes against police officers following a Fourth Amendment violation should be suppressed under the exclusionary rule in a prosecution for those crimes presents an issue of first impression in Washington. All courts which have considered this issue, however, agree that evidence of post–entry assaults on police officers are outside the scope of the exclusionary rule.

In *State v. Burger,* 55 Or. App. 712, 715–16, 639 P.2d 706, 708 (1982), the court stated:

As defendant correctly notes, freedom from intrusion into the home constitutes the core of one of the protections secured by both state and federal constitutions. That important freedom explains the rule requiring that, absent exigent circumstances, police officers must obtain a warrant before entering a home to search or to make an arrest. *See, e.g., Payton v. New York,* 445 US 573, 590, 100 S Ct 1371, 63 L Ed 2d 639 (1980). The issue here, however, is not whether physical evidence obtained because of a warrantless entry should be suppressed, but whether evidence of crimes committed against police officers after they have unlawfully entered a home should be suppressed. We decline to hold that after an unlawful entry evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively

immunized from criminal responsibility for any action taken after that entry. *See State v. Gaffney,* [36 Or. App. 105,] 108–09 [(1978)]. We do not believe that either the state or federal constitution compels such a result.

Considering the identical issue in *Commonwealth v. Saia,* 372 Mass. 53, 58, 360 N.E.2d 329, 332 (1977), the Supreme Judicial Court of Massachusetts stated:

> Even if one assumes the illegality of the entry there is no showing that the evidence sought to be suppressed is an "exploitation" of the primary illegality. There is no simplistic "but for" analysis that applies in this area of the law. *United States v. Bacall,* 443 F.2d 1050, 1057 (9th Cir. 1971). These are not cases where the illegal entry leads to the seizure of evidence which produces an admission from a defendant. *Commonwealth v. Spofford,* 343 Mass. 703 (1962). Nor are they cases where the illegal entry gives an officer knowledge of prior or ongoing criminal activity and hence bars testimony as to such evidence. What is present here is simply an attempt to suppress evidence which is a result of allegedly wilful acts of misconduct by James and Charles [Saia], whose provocation and perhaps ultimate defense may be found in the fact of the entry itself. The exclusionary rule does not reach this far.
>
> A just result can best be achieved by presenting the evidence (including the observations by the police officers which James and Charles seek to suppress), if that evidence is admissible in all other respects at a trial of the indictments. Whether the police entered the premises unlawfully, and whether James and Charles used excessive force, may become relevant issues at the trial. Finally, as to our conclusion that the rule of exclusion is not applicable here, we suggest this: Suppose a police officer or other person had been killed in the affray that allegedly occurred here. That hypothesis illustrates the inappropriateness of any ruling that the observations of the police were inadmissible under the exclusionary rule in the circumstances of these cases.

■ Aydelotte's response to the police intrusion, if reasonable, may provide a defense to the charges against him. *See* RCW 9A.16.020; *State v. Rousseau,* 40 Wn.2d 92, 241 P.2d 447 (1952). This is for the trier of fact to determine,

134

however, not for the trial court deciding a pretrial motion to suppress. The exclusionary rule does not apply to suppress the officers' perceptions of the alleged assaults upon them, or the evidence seized pursuant to the search warrant which was obtained based on those perceptions.

The order suppressing the evidence against Aydelotte is vacated, the order of dismissal is reversed, and the cause is remanded for further proceedings consistent with this opinion.

DURHAM, A.C.J., and CORBETT, J., concur.