OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, without costs, and the certified question not answered as unnecessary.
Defendant was paroled on July 27, 1988. On October 21, 1988, he was stopped by New York City police officers who recovered a gun from him. Defendant was arrested and charged with criminal possession of a weapon, second degree, but the criminal charges were subsequently dismissed. As a result of the arrest, however, a parole revocation proceeding was instituted and defendant’s parole was revoked. Defendant subsequently instituted this habeas corpus proceeding contending that the gun was improperly received at the revocation proceeding. A Mapp hearing was held, the motion to suppress denied and the petition dismissed. On appeal petitioner challenged the suppression ruling.
At the suppression hearing, Officers Pao and Cincotta testified that while investigating a robbery in Brooklyn, they spoke with a homeless man, named Frankie Gonzalez (not related to defendant), whom Officer Pao knew and had spoken with on numerous occasions. In the past, Gonzalez had given information to the police which led to the arrest of another individual for possession of a hypodermic needle. As they were speaking, three men, including defendant, walked toward them. Gonzalez pointed to defendant and told the officers that the man in the middle in the black jacket (defendant) "always carries” a "silver gun” and that he robs drug dealers. When asked how *894 he knew this, Gonzalez stated that he had seen defendant with the gun.
The officers got into their car and drove toward defendant who had turned onto another street and separated from his companions. The police stopped the car across the street from defendant, and the two officers exited with revolvers drawn. Officer Pao had his shield displayed around his neck and the officers further identified themselves by yelling "police”. The defendant then removed a pistol from his jacket pocket and started waving it around. Officer Pao instructed defendant to drop the gun, but defendant placed it back in his jacket and started running. The officers pursued and, at some point, defendant removed his jacket and dropped it. Officer Cincotta stopped to pick up the jacket, and Officer Pao eventually caught up with defendant and placed him under arrest. The gun and a quantity of drugs were recovered from the jacket. Defendant was charged with criminal possession of a weapon, second degree.
Defendant contends that the officers’ approach with drawn guns was illegal because it was based solely on the information given by Gonzalez that he had seen defendant on a prior occasion with a gun. The information, defendant contends, was insufficient to give the officers probable cause to believe that a crime was being or had been committed, and to approach defendant with guns drawn. The Appellate Division determined that the officers were possessed of information sufficient to provide them with reasonable suspicion to perform a forcible stop, and that they thereafter acquired probable cause when defendant displayed a gun.
We find it unnecessary to resolve the issue of the legality of approaching defendant with guns drawn because even if the initial stop of the defendant was unlawful, the evidence thereafter acquired need not be suppressed if there subsequently developed an independent basis supporting probable cause (see, People v Cantor, 36 NY2d 106, 111). In this case, once defendant took his gun out of his jacket and waved it toward the police officers, the officers would have had probable cause. The issue turns, therefore, on whether the gun was displayed as a direct consequence of the allegedly unlawful police action, or whether the gun was revealed as a result of defendant’s independent act (see, People v Boodle, 47 NY2d 398; People v Townes, 41 NY2d 97).
We conclude that defendant’s act of displaying his gun after *895 the officers had identified themselves was the result of his independent act and was not tainted by any alleged prior illegality. The case is distinguishable from People v Cantor (36 NY2d 106, supra) where the defendant drew his gun as he was approached by several plain-clothed unidentified police officers, but replaced the gun and offered no resistance as soon as the officers identified themselves. In that case, defendant’s act directly resulted from being approached in a threatening manner by several men in street clothes.
The facts in this case are closer to those involved in People v Townes (41 NY2d 97, supra) in which the defendant drew his gun and attempted to fire at a plainclothesman who had already identified himself (see also, People v Boodle, 47 NY2d 398, supra [defendant’s act of throwing his revolver out the car window after he had entered the police car was an independent act]). As in Townes, we hold that defendant’s “free and independent action in pulling * * * the gun, taken after and in spite of, or perhaps because of, the plainclothes-mien’s] identification”, dissipated any possible taint of the prior police conduct (People v Townes, supra, at 102).
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur in memorandum.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed, etc.