■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERRICK WATSON, Appellant.—Appeal by the defendant from

a judgment of the Supreme Court, Kings County (Grajales, J.), rendered April 19, 1990, convicting him of criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is reversed, on the law, that branch of the defendant's motion which was to suppress physical evidence is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

The defendant was charged, *inter alia,* with criminal possession of a weapon in the third degree as a result of his possession of a .45 caliber semi-automatic pistol on March 21, 1989. At the hearing held on the branch of the defendant's omnibus motion which was to suppress the gun, the People's witnesses were two of the three police officers involved in the arrest of the defendant. Officer Ronald Shindel, who was a Sergeant at the time of the incident, testified that as he and two other officers were riding in an unmarked car in plainclothes, at approximately 12:40 P.M., they observed the defendant clutching a brown paper bag and running at an extremely fast rate of speed on a sidewalk at East 98th Street in Brooklyn. The defendant was headed southbound in the direction of Brookdale Hospital. The officers drove their vehicle parallel to the defendant, but did not stop him or speak to him. The defendant maintained his speed, while at the same time looking over his shoulder, and then entered a parking lot at Brookdale Hospital. Officer Shindel exited the vehicle and directed the others to drive the vehicle to the other side of the parking lot. Apparently, this was to cut off the defendant's path. Officer Shindel then started running after the defendant through the parking lot.

The defendant ran straight to the other end of the parking lot. Upon noticing that there was a fence, he stopped, turned around, and started running in the direction in which he had come. At that point, for the first time, he noticed Officer Shindel running towards him. The defendant then changed directions and started running west through the parking lot. Officer Shindel testified that he also changed directions, "angling" around the parked vehicles and running after the defendant. The defendant then jumped atop a parked car and attempted to scale a fence with barbed wire on top on the west side of the parking lot. As the defendant was straddling

the fence, Officer Shindel saw him remove a gun and point it at him. Officer Shindel ducked behind a car, and upon emerging from behind the car with his gun drawn, he noticed that the defendant was on the other side of the fence, clutching the brown paper bag and running. The defendant dropped the gun and continued running when the two officers who had driven to the other side of the fence turned on the vehicle's siren and started chasing him.

At the hearing, Officer Shindel and Officer Anthony Sanseverino testified that their intention in "following" the defendant was to stop and question him. The brown paper bag was found to contain $51,000 in cash. Upon his arrest the defendant allegedly stated that it was drug money, that it belonged to "Ronnie", that he was being chased by certain individuals, and he had shot at those individuals.

We find that it was error for the hearing court to deny the branch of the defendant's motion which was to suppress the gun. The defendant's conduct in running and clutching a brown grocery paper bag was not indicative that criminal activity was afoot. There is no indication that anyone was chasing the defendant. Nor is there evidence that there was anything unusual about the brown paper bag. Consequently, the officers did not have a common-law right to inquire as to the contents of the bag and could not lawfully intrude upon the defendant's freedom of movement to the extent they did in this case (see, People v Hollman, 79 NY2d 181; People v De Bour, 40 NY2d 210).

The fact that Officer Shindel was wearing plainclothes and the defendant might not have known that he was a police officer did not render the pursuit of the defendant less intrusive. "The crucial factor was that depriving the defendant of his freedom of movement was effected by the police. Constitutional protections do not vanish merely because the victim of the unlawful governmental action fails to perceive the identity of the violator as a police officer" (People v Cantor, 36 NY2d 106, 112).

Nor can the defendant pointing a gun at Officer Shindel be considered independent criminal conduct. Since Officer Shindel never identified himself as a police officer, and there is nothing to suggest that the defendant perceived him to be one, the gun was revealed as a direct consequence of the illegal nature of the stop (see, People v Cantor, supra; contrast, People ex rel. Gonzalez v Warden, 79 NY2d 892; People v Boodle, 47 NY2d 398, cert denied 444 US 969; People v Townes, 41 NY2d

97, all distinguishing *People v Cantor, supra).* At no point did any of the officers identify himself or herself as a police officer. Absent an independent basis supporting probable cause, the hearing court should have suppressed the gun *(see, People v Gonzalez, supra).*

In view of our foregoing conclusions, we have not considered the defendant's remaining contentions. Thompson, J. P., Bracken, Pizzuto and Santucci, JJ., concur.