997 P.2d 950 (2000)
100 Wash.App. 457
STATE of Washington, Respondent,
v.
Manuel R. CORMIER, Appellant.
No. 18287-8-III.
Court of Appeals of Washington, Division 3, Panel Four.
April 18, 2000.
Reconsideration Denied May 24, 2000.
*952 David N. Gasch, Spokane, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, III, Deputy Prosecuting Attorneys, Spokane, for Respondent.
*951 SWEENEY, A.C.J.
Evidence discovered as a result of an unconstitutional Terry stop may generally be excluded. Terry v. Ohio, 392 U.S. 1, 14-15, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). But a person detained by a police officer, even illegally, may not assault the officer, if the arrest threatens only a loss of freedom. State v. Valentine, 132 Wash.2d 1, 21-22, 935 P.2d 1294 (1997).
Manuel Cormier rode his bicycle by and stared at police executing a search warrant. They stopped him. He refused to cooperate and assaulted an officer. Police then arrested him and found drugs. Police had no reason to suspect Mr. Cormier of criminal activity or suspect that he was armed and dangerous. The officers, nonetheless, legally arrested him after he assaulted them. We hold then that any evidence seized pursuant to this legal arrest was admissible. We, therefore, affirm the convictions.

FACTS
Spokane Police were investigating an assault with firearms and preparing to execute a search warrant. It was dark and the lighting was poor. Mr. Cormier rode his bicycle by the police patrol cars and the staging area a number of times. He then stopped to watch.
Detective Mark Burbridge approached Mr. Cormier, asked why he was there, and asked whether he knew anything about the residence the police intended to search. The detective asked Mr. Cormier to remove his hands from his coat pockets. Mr. Cormier refused. The detective told Mr. Cormier that if he did not remove his hands, he would arrest him for obstructing. Mr. Cormier again refused. He also refused to identify himself. Officers then tried to take custody of Mr. Cormier. He fought back and twice struck Detective Burbridge. The officers finally subdued Mr. Cormier and took him to jail. They found drugs in Mr. Cormier's shirt pocket during a search at the jail.
The State charged Mr. Cormier with assault in the third degree, RCW 9A.36.031(1)(d), and possession of a controlled substance, RCW 69.50.401(d). Mr. Cormier moved to dismiss the charges. He argued that police had no basis for a Terry stop. The prosecutor noted that the motion was untimely, but did not object.
The court found that Mr. Cormier's conduct and responses at the scene justified the original stop. It concluded that the original contact was justified under Terry and denied Mr. Cormier's motion to dismiss. Later a jury found him guilty of third degree assault and possession of a controlled substance.

DISCUSSION
Mr. Cormier appeals from the denial of his "motion to dismiss" based on what he claims was an unconstitutional seizure. *953 Procedure. The State argues that Mr. Cormier has changed his argument from a motion to dismiss in the trial court to a motion to suppress on appeal. And he did. But we fail to see the practical difference. Suppression would require exclusion of the drugs. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Richardson, 64 Wash.App. 693, 697, 825 P.2d 754 (1992). Both a motion to dismiss and a motion to suppress would lead to the same resultdismissal of the charges based on the unconstitutional seizure.
Seizure. Whether a person is seized is a mixed question of law and fact. State v. Armenta, 134 Wash.2d 1, 9, 948 P.2d 1280 (1997). Mr. Cormier does not assign error to the findings of fact; they are therefore verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). We review the conclusions of law de novo. Armenta, 134 Wash.2d at 9, 948 P.2d 1280.
The Fourth Amendment prohibits unreasonable searches and seizures. Terry, 392 U.S. at 8-9, 88 S.Ct. 1868. A person is "seized" only if a reasonable person would have believed that he or she was not free to leave based on all the objective circumstances surrounding the incident. Armenta, 134 Wash.2d at 10-11, 948 P.2d 1280; State v. Nettles, 70 Wash.App. 706, 710, 855 P.2d 699 (1993); Richardson, 64 Wash.App. at 696, 825 P.2d 754. We focus on whether the police conduct was coercive. State v. Thorn, 129 Wash.2d 347, 353, 917 P.2d 108 (1996).
Where an officer commands a person to halt or demands information from the person, a seizure occurs. United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Gleason, 70 Wash.App. 13, 17, 851 P.2d 731 (1993). But no seizure occurs where an officer approaches an individual in public and requests to talk to him or her, engages in conversation, or requests identification, so long as the person involved need not answer and may walk away. Armenta, 134 Wash.2d at 11-12, 948 P.2d 1280; Nettles, 70 Wash. App. at 709, 855 P.2d 699; Richardson, 64 Wash.App. at 696, 825 P.2d 754; State v. Aranguren, 42 Wash.App. 452, 454-55, 711 P.2d 1096 (1985).
The basis for the stop here was officer safety. Police may stop a person and frisk for weapons if: (1) the initial stop was justified, (2) a reasonable safety concern exists to justify the frisk, and (3) the scope of the frisk is limited to address their concerns. Terry, 392 U.S. at 20-25, 88 S.Ct. 1868; State v. Collins, 121 Wash.2d 168, 173, 847 P.2d 919 (1993).
The officer must point to specific and articulable facts which, coupled with rational inferences, create an objectively reasonable belief or well founded suspicion that the person is a safety risk. Terry, 392 U.S. at 24-25, 88 S.Ct. 1868; Collins, 121 Wash.2d at 173-74, 847 P.2d 919; State v. L.K., 95 Wash.App. 686, 695, 977 P.2d 39 (1999); Richardson, 64 Wash.App. at 697, 825 P.2d 754. We consider the totality of the circumstances surrounding the stop, including the officer's training and experience, the location of the suspect-officer contact, the time of day, the suspect's conduct and response to the officer, and any other circumstances. State v. Glover, 116 Wash.2d 509, 514, 806 P.2d 760 (1991); L.K., 95 Wash.App. at 695-96, 977 P.2d 39.
The court found: The officers were preparing to execute a search warrant at a location where an assault involving firearms had occurred. It was dark and the lighting was poor. Mr. Cormier rode his bicycle by the police cars and staging area for the warrant numerous times. He then stopped to observe near the staging area. It was difficult for the officers to see Mr. Cormier. Mr. Cormier's behavior indicated that he was very interested in what was going on.
Mr. Cormier made no furtive movements and did not appear armed, nor was he threatening. He rode his bicycle by, stared at police, and appeared interested. This conduct is not sufficient to justify a stop. The officers did not have a reasonable belief that Mr. Cormier was armed and, therefore, were not justified in stopping him. Terry, 392 U.S. at 27, 88 S.Ct. 1868; Collins, 121 Wash.2d at 173, 847 P.2d 919; State v. Terrazas, *954 71 Wash.App. 873, 879, 863 P.2d 75 (1993).
Assault. But Mr. Cormier has no right to assault an officer. State v. Mierz, 127 Wash.2d 460, 901 P.2d 286, 50 A.L.R.5th 921 (1995). And that assault justified the resulting custodial arrest.
In Mierz, the defendant was convicted of two counts of third degree assault and one count of unlawful possession of wildlife. Department of Wildlife agents entered Mr. Mierz's property without a warrant to confiscate two coyotes. Mr. Mierz commanded his dogs to attack the agents. Mr. Mierz also bit an agent. Id. at 464-66, 901 P.2d 286.
On appeal, Mr. Mierz argued that his attorney was ineffective for failing to suppress evidence obtained as a result of the agent's illegal entry into his yard. Id. at 471-72, 901 P.2d 286. The court concluded "that the evidence of Mierz's assaultive behavior was properly admitted regardless of any alleged Fourth Amendment violation[.]" Id. at 473, 901 P.2d 286. "[A]n assault against police officers following an illegal entry is outside the scope of the exclusionary rule, because it is sufficiently distinguishable from any initial police illegality `to be purged of the primary taint[.]'" Id. at 473-74, 901 P.2d 286 (citing State v. Aydelotte, 35 Wash.App. 125, 132, 665 P.2d 443 (1983)). Excluding evidence would allow one whose constitutional rights were violated to "`respond with unlimited force and, under the exclusionary rule, ... be effectively immunized from criminal responsibility.'" Id. at 474, 901 P.2d 286 (quoting Aydelotte, 35 Wash.App. at 132, 665 P.2d 443).
Any benefit provided by exclusion of evidence in these cases comes at too high a price. Given the complexity and nuance of Fourth Amendment law, in many cases the law enforcement officer and the citizen may both have sincere or reasonable beliefs about the lawfulness of the entry or arrest. Encouraging citizens to test their beliefs through force simply returns us to a system of trial by combat. The proper location for dealing with such issues in a civilized society is in a court of law.
Mierz, 127 Wash.2d at 475, 901 P.2d 286.
We employed the Mierz rationale in an application of article I, section 7 of the Washington Constitution.[1]State v. McKinlay, 87 Wash.App. 394, 398-99, 942 P.2d 999 (1997). Unless a traditional self-defense analysis is possible, an unconstitutional act by law enforcement does not justify assaultive conduct by an accused against a police officer. Id. (concluding that evidence of the defendant's use of a firearm to intimidate or assault those conducting the aerial surveillance is not subject to the exclusionary rule).
Mr. Cormier does not argue that he acted in self-defense. Id. Police therefore had the right to arrest him for the assault and take him into custody. The specific question then becomes whether evidence of a crime, other than evidence of Mr. Cormier's assault, is admissible following the illegal detention. Simply put, are the drugs admissible?
Mierz does not address this specific question. But the answer easily follows from the Mierz analysis. A person may not assault a police officer, even if the officer is illegally detaining, searching, or arresting that person. This is the lesson of Valentine, Mierz, and McKinlay. Valentine, 132 Wash.2d at 21, 935 P.2d 1294; Mierz, 127 Wash.2d at 474-75, 901 P.2d 286; McKinlay, 87 Wash.App. at 398-99, 942 P.2d 999. Clearly, then, if a person does assault the officer, he or she has committed a crimea crime for which he or she may be arrested and taken into custody.
The next question is whether any evidence seized pursuant to the now valid arrest for assault is admissible despite the illegality of the original stop. And we conclude that it is. United States v. Bailey, 691 F.2d 1009, 1018-19 (11th Cir.1982). If the arrest is legal, and this one is, then the officer has the right to search incident to that arrest. State v. Jordan, 50 Wash.App. 170, 173-76, 747 P.2d 1096 (1987).
*955 Police discovered the drugs in Mr. Cormier's shirt pocket during a search at the jail. The discovery of the drugs followed a search incident to a valid arrest. State v. Gammon, 61 Wash.App. 858, 863-64, 812 P.2d 885 (1991). Police could also inventory Mr. Cormier's possessions. State v. Smith, 76 Wash.App. 9, 13-14, 882 P.2d 190 (1994).
The conviction is affirmed.
KATO, J., concurs.
SCHULTHEIS, J. (dissenting).
The policy for creating an exception to the exclusionary rule when police officers are assaulted after they illegally seize a defendant does not support complete abrogation of the Fourth Amendment protections after such an assault. For this reason, I would not extend the Mierz exception to admission of evidence unrelated to the assault. State v. Mierz, 127 Wash.2d 460, 901 P.2d 286, 50 A.L.R.5th 921 (1995).
The Fourth Amendment protects the right of the people to be secure in their persons and property against unreasonable searches and seizures. State v. Bonds, 98 Wash.2d 1, 8, 653 P.2d 1024 (1982). Even before Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961) applied the exclusionary rule to the states, Washington recognized that evidence procured through the violation of constitutional guaranties against unlawful searches and seizures must be excluded in criminal trials. Bonds, 98 Wash.2d at 9, 653 P.2d 1024 (citing State v. Gibbons, 118 Wash. 171, 188-89, 203 P. 390 (1922)). Over the years, courts have measured the applicability of the exclusionary rule by its utility in achieving three objectives: (1) protection of individual privacy interests against unreasonable governmental intrusions; (2) deterrence of unlawful police action in obtaining evidence; and (3) preservation of the judiciary's dignity by refusal to consider evidence that has been obtained through illegal means. Id. at 12, 653 P.2d 1024.
In Mierz, the Washington Supreme Court held that an assault against a police officer after an illegal entry or improper arrest is outside the scope of the exclusionary rule, because it is sufficiently distinguishable from any initial police illegality to purge the taint. 127 Wash.2d at 473-74, 901 P.2d 286 (citing State v. Aydelotte, 35 Wash.App. 125, 132, 665 P.2d 443 (1983) and Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Specifically, Mierz held that excluding evidence of the assault would allow the defendant to respond with unlimited force and be effectively immunized from criminal responsibility. Id. at 474, 901 P.2d 286 (citing Aydelotte, 35 Wash.App. at 132, 665 P.2d 443). Any rational person must agree that an identified police officer who oversteps constitutional bounds, without threat of deadly harm or exploitation of the illegality, should not have to pay for this constitutional violation with his or her life. Id. at 475, 83 S.Ct. 407. But Mierz implicitly limits the exception to admission of evidence of the assault: "Even if the entry or arrest by law enforcement officers was unlawful, the exclusionary rule does not foreclose admission of evidence of the assaults where the officers are identified as such, are performing official duties in good faith, and there was no exploitation of any constitutional violation." Id.
Most courts agree that evidence of crimes against police officers following a Fourth Amendment violation must be admitted in a prosecution for those crimes. See, e.g., Aydelotte, 35 Wash.App. at 132-33, 665 P.2d 443, and cases cited therein; see also State v. Tassler, 159 Ariz. 183, 185, 765 P.2d 1007 (1988); State v. Boilard, 488 A.2d 1380, 1386-87 (Me.1985); State v. Ritter, 472 N.W.2d 444, 451-52 (N.D.1991); Commonwealth v. McKeirnan, 337 Pa.Super. 403, 487 A.2d 7, 10-11 (1985). The policy for this exception is clear: exclusion of evidence of the assault would jeopardize the safety of police officers "by placing them at the mercy of any person, criminal or noncriminal, who believed he was being arrested unlawfully." McKeirnan, 487 A.2d at 11.
The policy for admitting evidence of an assault allegedly committed in response to an illegal seizure, however, has no application to evidence of other prior and ongoing crimes discovered after the assault. Concern for officer safety does not support abrogation of *956 all Fourth Amendment guaranties after a defendant resists an unlawful search or seizure. Evidence is suppressed as fruit of the poisonous tree when the evidence was gathered by exploitation of the original illegality. Aydelotte, 35 Wash.App. at 131-32, 665 P.2d 443 (citing Wong Sun, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441). Using the intervening illegality of the defendant's assault to justify invasions of his privacy incident to arrest is an exploitation of the original unlawful seizure.
In People v. Abrams, 48 Ill.2d 446, 271 N.E.2d 37 (1971), the Illinois Supreme Court faced an analogous situation. Police officers attended an anti-war fundraiser, left, and returned in force without a search or an arrest warrant. When the organizers of the fundraiser denied them entry, one of the officers asked a minor sitting at the admission table to hand him a cup containing an alcoholic beverage. At that point, the officer stated a crime had been committed in his presence, and he attempted to enter. There was a scuffle, many were arrested, and the police seized evidence that liquor was being sold without a license. In reviewing their convictions for violations of the municipal code as well as for various assault charges, the Supreme Court held that all evidence procured by the illegal entry should have been suppressed except the testimony concerning the assaultive conduct. Abrams, 48 Ill.2d at 455, 271 N.E.2d 37. Only that evidence was admissible, because "we hold that an accused cannot effectively invoke the fourth amendment to suppress evidence of his own unlawful conduct which was in response to police actions in violation of the amendment." Id.
I, like the court in Abrams, 48 Ill.2d at 457, 271 N.E.2d 37, would hold that although the evidence of the assault that was a reaction to the illegal seizure was properly admitted, all other evidence related to this seizure (including evidence obtained in a search incident to the arrest) should have been suppressed. Otherwise, as this court stated in a case involving a tainted consent to search, "[t]he purpose of the exclusionary rule, promoting respect for the Fourth Amendment, would be eroded if law enforcement personnel could cure their illegal conduct by properly handling other aspects of a case." State v. Jensen, 44 Wash.App. 485, 495, 723 P.2d 443 (1986). A more insidious result might be that officers, with knowledge that their initial seizure is unlawful, could escalate their intrusion on a suspect's privacy with the goal to incite a violent response, thus purging the taint and facilitating their true purpose: a search incident to an arrest.
This extension of the Mierz exception is a threat to individual privacy interests that potentially encourages unlawful police action and disrespect for the court. See Bonds, 98 Wash.2d at 12, 653 P.2d 1024. Accordingly, I respectfully dissent.
NOTES
[1] "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7.