IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76321-1-I |
| | ) | |
| Respondent, | ) | ORDER GRANTING MOTION |
| | ) | FOR RECONSIDERATION IN |
| v. | ) | PART, WITHDRAWING |
| | ) | OPINION, AND |
| THOMAS CHARLES BABB, | ) | SUBSTITUTING OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

The appellant, Thomas Babb, has filed a motion for reconsideration of the opinion filed on November 13, 2018. Respondent, State of Washington, has filed a response. The court has determined that said motion should be granted in part and that the opinion filed on November 13, 2018, shall be withdrawn and a substitute unpublished opinion be filed. Now, therefore, it is hereby

ORDERED that the motion for reconsideration is granted in part; it is further

ORDERED that the opinion filed on November 13, 2018, is withdrawn and a substitute unpublished opinion shall be filed.

Andrus, J.

Becker, J.P.T.

Chun, J.

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76321-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THOMAS CHARLES BABB, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: January 28, 2019 |

ANDRUS, J. — Thomas Charles Babb was unlawfully stopped, chased, and arrested by a police officer. The State alleged Babb struck the officer, who arrested him for assault in the third degree. A search incident to arrest led to the discovery of drugs in his pocket and backpack. He was subsequently charged with both assault of a police officer and possession of heroin. Babb filed a motion to suppress evidence of the drugs found in the search, which the trial court denied under State v. Cormier, 100 Wn. App. 457, 997 P.2d 950 (2000).

A jury convicted Babb of possession of a controlled substance but acquitted him of the assault charge. Babb contends that the trial court erred in admitting the evidence unrelated to the assault charge, including the evidence of heroin discovered in the search incident to arrest.

FACTS

On January 6, 2016, Everett Police Officer Steven Ross responded to a call reporting a "slumper."[1] The slumper, later identified as Babb, was "hanging out" in the walkway of an apartment building on 112th Street Southeast in Everett. When Officer Ross arrived, he saw Babb and three firefighters walking down the building's stairs. Babb was uneasy on his feet and staggering. One of the firefighters told Officer Ross that he needed "to talk to [that] guy" because someone, possibly Babb's stepmother, had told the firefighter that "[Babb]'s not supposed to be there."

As Babb approached the bottom of the stairs, Officer Ross saw Babb was carrying a backpack and longboard. Officer Ross identified himself as a police officer and told Babb that he wanted to talk. Babb did not reply and continued to walk past him. At that point, Officer Ross put his hand on Babb's shoulder and told him to stop and to put down the backpack and longboard. Babb put down his possessions and ran away from the police. Officer Ross chased Babb, yelling that he was under arrest. Officer Ross chased Babb across 112th St. SE and down a hill into a grassy area. When Babb reached a fence and tried to climb it, Officer Ross pulled Babb off the fence and a struggle ensued. As Officer Ross tried to handcuff Babb, he testified that he struck Babb twice in the back because Babb would not comply with his verbal requests to put his hands behind his back. Babb responded by striking Officer Ross twice in the head. After the second strike,

---

[1] A slumper is someone passed out due to a medical emergency or under the influence of drugs or alcohol.

Officer Ross drew his Taser and fired multiple darts into Babb's torso and right leg, and when those failed to subdue Babb, Ross started doing drive stuns.[2]

Babb went limp, at which point Officer Ross was able to handcuff him. Officer Ross and a second officer carried Babb up the hill to receive medical assistance. Officer Ross searched Babb's person and found drug paraphernalia and what looked to be heroin. Officer Ross found additional drug paraphernalia inside Babb's backpack. The police arrested Babb for third degree assault and later charged him with both assault and possession of a controlled substance (heroin).

Babb moved to suppress the drug evidence, contending that his detention and subsequent arrest were unlawful. The court concluded the initial detention and arrest were unlawful because the police had no probable cause to believe Babb had committed any crime. However, the court denied the motion to suppress, reasoning that the police found the drugs as a result of the assault on Officer Ross while he was engaged in his official duties. A jury convicted Babb of possession of a controlled substance but acquitted him of the assault charge.

## ANALYSIS

Babb challenges the trial court's legal conclusion that "[c]onsistent with State v. Cormier, . . . even though the stop was illegal, because the drugs were found as a result of the arrest for Assault in the Third Degree, they are admissible." We review this conclusion of law de novo. State v. Armenta, 134 Wn.2d 1, 9, 948

---

[2] Officer Ross testified that "a drive stun is when you place the front of the taser on a person's body. The idea is that it will create an electrical connection between the darts and the taser and that either neuromuscular incapacitation will occur to prevent someone from using their muscles like they normally would or the pain that it causes convinces them to stop resisting and stop fighting."

P.2d 1280 (1997). Because Babb does not assign error to the trial court's findings of fact, they are deemed true on appeal. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

Babb argues that the trial court erred in basing its decision to deny the motion to suppress on State v. Cormier, 100 Wn. App. 457, 997 P.2d 950 (2000). In that case, the court held that if the defendant is illegally detained or arrested but is then lawfully arrested, the evidence derived from the second, lawful arrest is admissible. Babb argues Cormier is inconsistent with article I, section 7 of the Washington State Constitution, was based on Fourth Amendment jurisprudence, and implicitly relied on the federal attenuation doctrine, an exception to the exclusionary rule not expressly adopted in Washington.

Article I, section 7 of the Washington State Constitution states that "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision generally provides more protections to an individual's privacy than the Fourth Amendment to the United States Constitution. State v. Parker, 139 Wn.2d 486, 493, 987 P.2d 73 (1999); see also Blomstrom v. Tripp, 189 Wn.2d 379, 399, 402 P.3d 831 (2017). In general, under the Fourth Amendment and article I, section 7, evidence found as the result of an illegal search or seizure must be suppressed. State v. Bonds, 98 Wn.2d 1, 11, 10-11, 653 P.2d 1024 (1982).

However, under the Fourth Amendment, if a defendant assaults a police officer during an unlawful stop or detention, evidence of the assault has been deemed admissible. See State v. Mierz, 127 Wn.2d 460, 473, 901 P.2d 286 (1995)

(holding that when the initial entry or arrest is unlawful, but the individual assaults an officer, evidence of the assault is not foreclosed by the exclusionary rule). In State v. McKinlay, 87 Wn. App. 394, 398-99, 942 P.2d 999 (1997), this court held the result is the same under article I, section 7:

> When an individual assaults a police officer whose intrusion allegedly violates Fourth Amendment protections, evidence of the assault is outside the scope of the exclusionary rule. A contrary rule would allow one who was subject to an illegal search to respond with unlimited force and be immunized from prosecution. Even an illegal law enforcement entry would not justify assaultive conduct by an accused against a police officer unless a traditional self-defense analysis is possible . . . . This reasoning applies equally under article I, section 7 of the Washington State Constitution.

Id. (internal quotation marks omitted)

While Mierz and McKinlay addressed the admissibility of evidence of the assault, neither case addressed the admissibility of evidence of other crimes discovered in a search incident to the assault arrest. That issue arose in Cormier, where the court held that evidence of drugs found in a search incident to an arrest for assault on a police officer was admissible. Cormier, 100 Wn. App. at 464.

Cormier was arrested after riding his bike around an area under police investigation. Id. at 459. The detective on scene asked Cormier why he was there, if he knew anything about a crime at that location, and to remove his hands from his pockets. Id. Cormier did not comply. Id. When the detective asked Cormier again to remove his hands from his pockets, he threatened that he would arrest Cormier for obstruction. Id. Cormier still did not comply, and the detective attempted to handcuff Cormier, at which point a struggle began. Id. Cormier hit

the detective twice. Id. The detectives were able to handcuff Cormier and take him to jail, at which point they found drugs in his shirt pocket. Id.

Concluding that "the officers did not have a reasonable belief that Mr. Cormier was armed and, therefore, were not justified in stopping him," the court determined that the initial seizure was unlawful. Id. at 462. However, the court continued to say that "[b]ut Mr. Cormier has no right to assault an officer. And that assault justified the resulting custodial arrest." Id. Relying on our Supreme Court's decision in Mierz, the court held that even when there is an illegal arrest or act, "an assault against police officers . . . is outside the scope of the exclusionary rule, because it is sufficiently distinguishable from any initial police illegality to be purged of the primary taint." Id. (internal quotation marks omitted) (quoting Mierz, 127 Wn.2d at 473-74).

Babb argues that Cormier implicitly relies on the federal "attenuation doctrine," an exception to the exclusionary rule not yet recognized under article I, section 7 of our state constitution. Babb contends this exception should be rejected just as the Washington Supreme Court has rejected the inevitable discovery doctrine in State v. Winterstein, 167 Wn.2d 620, 220 P.3d 1226 (2009) and the "good faith" exception in State v. Afana, 169 Wn.2d 169, 233 P.3d 879 (2010). The attenuation doctrine defines the parameters of the "fruit of the poisonous tree" rule. Evidence is not deemed "fruit of the poisonous tree" if the connection between the challenged evidence and the illegal actions of the police is "so attenuated as to dissipate the taint." State v. Eserjose, 171 Wn.2d 907, 919, 259 P.3d 172 (2011). Babb seeks a ruling that under article I, section 7 of the state

constitution, once it is determined that the police have effected an unlawful arrest, the defendant's conduct thereafter becomes irrelevant and any evidence discovered must be excluded as "fruit of the poisonous tree."

We do not need to resolve the issue of whether the attenuation doctrine is compatible with article I, section 7 to resolve this case. Babb's formulation of the exclusionary rule under our constitution is a bridge too far. Babb does not challenge the legality of his arrest for assault on a police officer. Nor does he dispute that the drugs were found during a lawful search incident to this lawful arrest. Under these circumstances, the discovery of the drugs was not the result of an unlawful arrest. Cormier's reasoning is sound under both the Fourth Amendment and article I, section 7 of the state constitution.

The reasoning in Cormier is supported by State v. Rousseau, 40 Wn.2d 92, 241 P.2d 447 (1952), overruled on other grounds by State v. Valentine, 132 Wn.2d 1, 21, 935 P.2d 1294 (1997) and State v. Holeman, 103 Wn.2d 426, 693 P.2d 89 (1985). In both cases, there were two, distinctive arrests: an unlawful arrest followed by a lawful arrest, and evidence discovered incident to the second, lawful arrest, was deemed admissible.

In Rousseau, the police unlawfully searched and arrested the defendant for burglary. 40 Wn.2d at 93. As the officer escorted Rousseau to his vehicle, Rousseau pushed the officer into oncoming traffic and fled by foot. Id. When the officer caught up with Rousseau, he searched him and recovered a stolen watch. Id. at 94. The Supreme Court held that when deciding whether to suppress evidence obtained after a second arrest, the trial court must determine whether

that arrest was lawful. Id. The court concluded that the defendant was lawfully arrested following the assault, reasoning that the watch was found during a search incident to the lawful arrest, and therefore, there was no error in denying suppression of the evidence. Id. at 96.

Similarly, in Holeman, officers illegally arrested the defendant in his home without a warrant. 103 Wn.2d at 429. However, after reading the defendant his Miranda[3] rights, the defendant's father raised a crowbar above the officers in a "threatening position," and the defendant attempted to intervene, resulting in the arrest of both the defendant and his father for obstruction. Id. at 428. The court concluded that the defendant's second arrest for obstructing a public servant was lawful, and therefore, the defendant's subsequent jailhouse confession was admissible. Id. at 430-31. In Cormier, as in Rousseau and Holeman, the second arrest was lawful and the evidence found thereafter was admissible. See Rousseau, 40 Wn.2d at 96; Holeman, 103 Wn.2d at 431; Cormier, 100 Wn. App. at 463.

Thus, Cormier follows well-established case law in Washington to hold that a valid and lawful arrest for assault on a police officer breaks the causal chain between an illegal detention and a subsequent search. See Eserjose, 171 Wn.2d 930, 932 (only evidence obtained by unlawful government action need be suppressed; causation turns on the logical link between the illegal government conduct and the acquisition of the challenged evidence) (Madsen, J., concurring)).

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

We conclude that the trial court did not err in denying Babb's motion to suppress evidence of the drugs. Because the trial court did not err in denying Babb's motion to suppress, Babb's motion for reconsideration of the motion to suppress was correctly denied.

Affirmed.

WE CONCUR:

Andrus, J.

Chun, J.

Becker, J. P. T.

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2019 JAN 28 AM 8: 39